oral argument not to exceed 15 minutes per side. Ms. Wolfe for the defendant appellant. Good morning. Good morning your honors. May it please the Congress knows how to structure a statute to do exactly what the government has asked, but instead they debated, argued, negotiated, and edited, and finally decided on the statute that is before us, which is the amendment to the safety valve requirements, which expands eligibility. 3553 F1 is a conjunctive negative proof. First of all, this is part of the First Step Act, is that right or not? Yes your honor. The First Step Act liberalized criminal penalties for drug use, right? Did you say liberalized? It decreased the penalties. Yes your honor. It expanded what the original change in the crack laws were. I think it made some of those retroactive. It made the penalties for drug offenses more lenient, and that's what Congress intended to do with First Step, right? They did your honor. It was a defendant friendly act. It was your honor. In response to the harsh drug laws, the mandatory minimums that we had been operating on for a lot of years, so I think that's the background of this, and this is part of the First Step Act, and we're trying to figure out what Congress did with this double negatives and sub parts, and obviously there's a huge conflict. We've got circuits going every which way on it. That's correct your honor. I think it's somewhat important to just put it in context. What's Congress up to here? And the First Step Act is, I mean that was quite extraordinary I think what happened in other parts of it as well. It did your honor. It did. It went back and allowed people who had been sentenced many, many years ago to be resentenced when originally it wasn't applied to them. It changed who is eligible to get out early, to ask for compassionate release. It did a big job towards clearing out a lot of the people that Congress felt should not be serving these long sentences. And so before, the version of this F-1 provision before the First Step Act said if you have more than one point, if you have two or more points, you're ineligible. Correct your honor. So now it says, even under the government's reading, it says you need to have four one point offenses don't even count and you can't have a big three point and you can't have a violent two point. Correct. But even the government's interpretation is much more lenient towards defendants than the prior version of the Act was. Correct your honor. But we have to look at this as this is a five point section and F-1, the subsection, is just one fifth of that statute. So even though they're saying that our reading completely, you know, is much more liberal than what Congress would have ever thought of doing with the statute, we have to keep in mind this is just liberalizing one fifth of a statute. And the one fifth of the statute that it's liberalizing is the part that looks solely at what this person did in the past. The parts that are still there that have not been touched are the parts that look at what the person did in this specific offense. Yes, it's all criminal history points in that small subsection, which we are saying that Congress intended by making it conjunctive with the and, intended to allow our court system, our judges, to look at this person's criminal history and look at what this person's elocution is and give them the discretion by opening it up to, you know, to give them something below the minimum sentence. The government's main argument is that if we adopted your position that sub-A would have no meaning at all, that it would be totally redundant to the combination of B and C. What's your position as to that? Your Honor, there are going to be people who have two violent criminal offenses, I'm sorry, two point violent criminal offenses, a three point serious offense, and someone who has more than four criminal history points. And those are the specific people that Congress is saying, we are going to put our foot down at these people and allow the district court with all the other ones to use their best judgment because they are the ones who are evaluating all of the other elements of the case. We are going to allow Congress on everyone else to use their judgment as long as they need. Two, three, four, and five, the further requirements of safety valve, which when you are looking at it like that, does not really expend that much. I guess, I just want to be candid with you about my reservations about your position because this is a very tricky issue. It's a really tricky grammatical question and, you know, we are trying to be, have fidelity to the words that Congress wrote. But I'm struggling to see what work 1A does if a defendant has a prior three point offense as determined under the sentencing guidelines. So it says, I mean, if we go back to the MDASH part, I mean, I've never read so much about an MDASH in briefs. I love MDASH. I do like them in writing, but anyway. So it says the defendant does not have, so it's in present tense, and does not have a prior three point offense as determined under the sentencing guidelines, does not have a prior two point violent offense as determined, and that determination seems to be something, I mean, seems to be something the court would be doing in this case. Would you agree with that or is that mistaken? When is this determination? Mr. Hayes' specific case or? Well, I mean, if the district court is determining in this particular case, if Judge Varlan in this case is being told, okay, does the guy have a prior three point as determined under the guidelines now? In other words, like a three point that's still effective, that hasn't timed out. If he's got that and he's got a two point, then he's got five and what's A doing? I think that's where myself and the government have the issue as to what actually is a prior three point offense. And your honor, I think that's clear from the reading that there is a difference. Otherwise, in section one, I'm sorry, in F1A, I think it is, where it says counting a prior or ignoring prior one point offenses, that would make it redundant because it could just say, you know, ignoring prior or ignoring one point offenses. It doesn't need to say the other part. It could say. If the defendant's got a three and a two as determined under the guidelines, so Judge Varlan looks, he's got, let's say the guy has only two priors. And one of them, Judge Varlan applies the guidelines, you know, right before sentencing. Okay, one of these counts as three, three point to his history now. The other one counts as two to his history now. And then you look at one, oh, he can't have more than four criminal history points. I mean, that is just superfluous at that point, isn't it? No, your honor, that's because the sections for criminal history point calculations have two parts. The first part is where you assign the points. And then the second part is where you determine what counts. And in our argument. I'm talking about 4A1. 1.1 and 1.2, yes. And that's where we get into all of the single sentence issues, which could easily result in a defendant having a two point violent offense and a three point serious offense that do not result in four. And I could give you your honor examples if you wanted, but one, you know, good one would be, you know, let's say in Mr. Haynes' situation, he got a two, two and two, two year sentence, two year sentence, two year sentence stacked. But let's assume that he did not. If he had, you know, a six month sentence, plus a six month sentence, plus a six month sentence, which when they're looking under the single sentence rule, those six month sentences are aggregated. And so even though on their own, they would be a one point offense each, each one of the, he was convicted of attempted, attempting to obtain a controlled substance by fraud. So if you had looked at each one of these, he got two year or he got six months on one, that would be a one point offense, six months on another, six months on another. But then when we go to the second section, that's where the counting rule came in. And that's where it turned into one three point offense. But we're arguing that as far as what Congress would have intended, they would not have intended that someone with three one point offenses would be excluded from safety valve. Just like if someone had a 30 day sentence and a 30 day sentence who were stacked on top of each other, and one of them happened to be a misdemeanor assault. Those are just, that was his entire criminal history. He had one misdemeanor assault that he got 60 days for, and one misdemeanor assault that he got 30 days for, and one misdemeanor theft that he got one. And they took place at the same time, sentenced at the same time, but they were stacked. At that point, under the government's argument, he would have a violent two point offense because when you go to the counting rules, which are in the second section, that would make it a two point offense because he has 60 days or more. Congress would not have wanted someone who just has one 30 day misdemeanor theft or misdemeanor assault sentence to be fully excluded under safety valve when someone with a three point sentence for murder would be eligible. Well, let's not say murder because that would be a crime of violence. A three point nonviolent offense where he served a serious amount of time would still be eligible if it took place a long, long time ago. What's the counting provision that you're referring to? The counting provision, your honor, is in section 4A1.2 where it goes through and it doesn't... There's a subsection, there was an E that... An E for the single sentence rule, I think that is subsection... I thought E was the one about, you know, what counts from a time standpoint. Yes, your honor. And under that, that's where it doesn't say make that scored zero, it just says do not count it. So if it's a sentence, you know, exceeding 10 years from the end, it doesn't say that, you know, you give that a zero, it says do not count it, which implies that it still has a score. And so that's also why in this case the language is clear how they used it in amending the statute to say that it has to be a prior three point offense. And it doesn't do any disservice to my reading that it says as determined under the sentencing guidelines. Because the sentencing guidelines, that second section, those two do work together, section 1 and 2. One says what to count it as, what the value is, the other says how to count it. And so a prior three point offense, it still exists, it's just not counted. And that's why there's a separation from criminal history points in the first section, why they refer to it as that. Is that the argument that the dissent in the United States versus Pace made? Yes, your honor. Justice Woods did a much better job than I could ever do on going through it. Is that the analysis that you wish us to employ here? Yes, your honor. And is that opposed to the Ninth Circuit analysis in Lopez? Yes, Lopez is trying to read a two point as including a three point, which I can see, you know, one of the things they said in oral arguments on that is if you are trying to, if you're required to for your bar licensure to do 25 hours of CLEs, if you do 26, you're still covered. It just says attorneys must do 25 hours. And so it's implied that if you do 26, it's counted. I don't think that that is the plain reading, but I don't think it's unreasonable to read that. What if, I think you've got a pretty good argument that the dissent in Pace does a good interpretation of the statute and therefore makes, gives meaning to Sub A. But say we disagreed with you and that Sub A was superfluous, redundant. Would that be the end of the story or would the statute still, should the statute still be interpreted the way you want for the result? My time's up, so I'll close with that, Your Honor. No, I do not think that we would. Tell me why. It would not end with that, Your Honor. That's just how we have to read it, how it was written. If how it was written means that part of it is redundant, that doesn't ruin the statute. Are there other redundant statutes? There are, Your Honor. I think there are because I've dealt with them before. There are, Your Honor, and our job is not to fix the statutes. Okay, so they argue, well, there's a canon of construction that you should not normally be inclined to interpret to make redundancy into the statute. But is that a firm rule or is that a canon? That's a canon, Your Honor, and the firmer rule is that you have to read what the statute says and that if it leads to Do you like the text of the statute? Yes, Your Honor. I usually do. Thank you, Your Honor. All right, you'll have your rebuttal. Let's hear from the government. Good morning. May it please the Court. Francesco Valentini for the United States. The district court correctly determined that Hines' three-point prior drug offense made him ineligible for the safety valve. The text, the structure, and the context of the statute all show that the safety valve, as amended by the First Step Act, is limited to defendants who satisfy each of the How does the text support it when it has an and rather than an or? So the text, as we explained in our brief, the text creates the threshold to possibility, to equally plausible readings of the statute. One interprets and as a package and the other one, the one that we think is then supported by structural consideration and by all the canons of statutory interpretation, interprets and in a distributive fashion. And Congress uses and in a distributive meaning all the time. It is a, in fact, even the Constitution itself, Article 3, Section 1, Clause 2, if I can read from it, says that the judicial power shall extend to all cases in law and equity arising under the Constitution, the laws of the United States, and treaties made or which shall be made under their authority. Now, no one thinks that Constitution, law, and treatises should be read as a package. So the federal jurisdiction is limited to cases that arise under all three of them. The and is distributive. It is sufficient so long as the case arises under the Constitution, the case arises, and the judicial power extends to cases that arise under the laws of the United States, and it extends to cases that arise under the treaties. It does not require all three, which means the and in that context is distributive. There are other examples, some of which are, for example, cited. The and is binding stuff together here, and you don't disagree with that. I mean, and, I mean, there's a difference between textualism and literalism, and textualism, meaning depends on context, and this is a super subtle question here, I do think. But these three, F1 through 3, F1, I guess it's A through C, they are being bundled. The defendant has the burden to show, to satisfy F, correct? Yes, absolutely. Okay, so it's either the government's got to show that he's got all three, or he's got to show that he has none of the three. But it's, I mean, these are a group, and so he's got to show I don't have all three of these, or you have to show he does have all three, and it just depends on the context. I mean, we do use English this way in plenty of speech. And doesn't decide this case. But let me ask you a question about surplusage. All right, so F1A refers to, quote, a one-point offense. F1B and C talk about a prior three-point offense, a prior two-point offense. And does the word prior there suggest that, as Ms. Wolfe was saying, that those offenses could be referring to an older two-point or three-point, which doesn't, it's a prior three-point, but under the counting thing, it doesn't count. No, it just means in paragraph B and C, it's prior, there's an adjective, it modifies offense. It simply means it's an offense which counts as determined under the sentencing guidelines, which is the concluding phrase of both B and C. Now, why isn't it, I mean, I think Ms. Wolfe was just saying, I mean, as she put it, it doesn't count, but it still has a score. So it's like this offense has a status of being a two-point or a three-point under one provision, 4A something. And then another 4A provision says, don't count that towards the total. So the offense has, it's a four-point offense, but we're not counting, under one provision, but we're not counting it under another. Why doesn't that support her view that you can have a prior three-point that's not counting and then that you sort of escape the surplusage business? I want to get, I absolutely want to get to that in one second. I do want to complete my answer to your prior question, which is, the reason why the one-point offense in paragraph A does not have the prior before it is because we already know we're talking about criminal history because that's how paragraph A starts. It should not have more than four criminal history points except for the one-point offense. So that's why there's no qualifier prior. Everybody is doing the same work as prior? Well, we're already, sorry. Oh, okay. Yeah, no, we absolutely know once we're in paragraph A that we're already talking about criminal history. As to the interpretation of the guidelines, what does it mean for an offense to have a certain I understand what you just said. Go ahead. Thank you. As to your follow-up question about the two provisions within Chapter 4 of the guidelines, the commentary to 4A1.1 makes clear that 4A1.1 and .2 must be read together. They're not a separate exercise. Sure. The guidelines require the computation to be carried out based on .1 and .2, and there's no such thing under the guidelines as a three-point offense that scores zero points. Either an offense or actually a sentence of imprisonment scores three points, or it does not score three points. There's no such thing as an offense which at some point formally scored three points, but it no longer does. How about older offenses? Wouldn't older offenses be scored like that, but not tallied or offenses over 15 or 20 years ago? In that case, the offense simply does not add points, in which case it has zero points. There's no such thing as an offense that scores points, but then no longer scores. It scores, but then it doesn't apply them, I guess, I think is the argument. It would be a score, but you don't compute it. Well, right. As determined under the sentencing guidelines, that offense is a zero-point offense. The entire concept of having a three-point offense that scores zero points is non-sequitur under the guidelines. All the guidelines do and ask the court to do a sentencing is to determine how many points an offense scores right now for purposes of this defendant. B and C talk about offenses, right? But A doesn't talk about offenses? Well, A references offense in the exception. It says, except do not count one-point offenses. So there is a reference to the word offense in A. But in A, it's just dealing with a different thing. I mean, A is saying the guy can't have more than four total points. I mean, take all of his offenses and you can't have more than four. And then B is saying, okay, one of them can't be too big and too bad. And the third one is, okay, we don't want any violent people either. I'm sorry. Yeah, that's correct. That's our position. And if I can add, first, what Your Honor just said underscores how paragraph A becomes superfluous under the defendant's reading. But it also underscores how the result overall is nonsensical. It cannot be what Congress intended. And that is not just a matter of policy preference. Maybe Congress wanted to be more liberal or less liberal, and we can talk about the First Step Act overall. But it's also a question of coherence. It cannot be that Congress wanted to treat more liberally and more favorably defendants who have two, three prior three-point offenses, one of them violent and one of them nonviolent. This guy's got five violent prior two points. Apparently he's eligible as long as he didn't happen to have a three-point at some point or something. And even more troubling, a defendant who has five three-point offenses is still viable because he does not have a prior two-point violent offense. Even if he has five three-point prior offenses. Are there three-point violent offenses? Yes, Your Honor. I think most of them, so long as they – You know, this is fairly arcane. So there are violent three points. Oh, absolutely. The guy could have five violent three points, but so long as he doesn't have a violent two-point, he's eligible for relief. Exactly. And that's why we say that the result is not just difficult to square with what Congress could have wanted. It's just inherently incoherent. It's an absurd result, which is – we understand a fairly high bar in terms of statutory construction, but it's one that because of the incoherent way in which different defendants are treated, just cannot be what Congress intended in this case. And, you know, if I can also touch on the – I think there's one argument that we also make that I wanted to touch on, which is about the M-dashes, which the majority decision in the Seventh Circuit has relied on. We think that that helps, at least lends further credence to our argument and to the fact that – I don't – well, I guess. I mean, we're trying to give this some sort of ordinary reading, and, like, what ordinary person is thinking about M-dashes or really reacting to M-dashes? I kind of fall off the wagon on the M-dash thing. I would say different jurors can attach different weight to different considerations. I mean, let's go – I mean, speaking of sort of ordinary English, I mean, and is a conjunctive, and it says he does not have A, B, and C. So why are they wrong? You know, it's like, okay, well, he's only got A and B, so he doesn't have A, B, and C. Let's set aside the point about absurdity that you just made and just look at it. Like, what is it contextually? All right, I talked about context. What is it – without using, like, words that no one's heard of from the Garner book, all right? In plain English, if I was talking to my dad, what is it about the context here that takes this out of the situation of, okay, you know, he's only got A and B, therefore he doesn't have A, B, and C? What is it that takes it out of that and means you really can't have any of A, B, and C? The fact that there is a fundamental criminological purpose to not – to requiring the defendant to satisfy each of these three criteria. Okay, first we set that aside, and we're just talking about –  We're not looking at purposes. Oh, I see. We're looking at the words, okay? And there's something contextually here that in your view – and frankly, it's an intuition that I think resonates. There's something contextually in the words that sets this apart from the he must have A, B, and C and signals, no, if he's got any of these, he's in trouble. But what is it? I mean, let's get beyond intuition. Concretely, can you point to a word, a structure in this thing that supports your position? Yeah, absolutely. And I think we're going back to the front part of our briefing. I think where Your Honor also referenced at the beginning, we do use and to have two different meanings. They're both conjunctive. We completely agree as a front-line matter, at least as a top-line matter, that and is conjunctive. But there's two ways to conjoin concepts. And one is distributive, and one of them is cumulative. And the distributive concept, which is, again, the front part of our brief, is a use of the conjunction and that, if you will, implicitly repeats what the prefatory, the leading sentence is. And that is why that recurs, for instance, in other provisions. We have cited some in our brief. There are some which are actually phrased in the negative, which we're happy to provide to the Court, which are cited in the appendix to the government's unbanked brief in the 11th Circuit in United States v. Garcon v. 18 U.S.C. for 845A. It provides a series of exceptions to the firearms statute, and the provision says this chapter does not apply to, and then it has a series of seven exceptions. It cannot be that Congress intended the exception to be limited to firearms. 845A? Yes, 845A, yes. So conjunctive, we're learning things. Conjunctive has two different grammatical potential meanings, you're saying. One is distributive, which means you're essentially repeating the preface as to every kind of subpart. And then the other one is cumulative, which is you've got to have all these things. Right. It just creates a package, which is just appended as a package. And why, I mean, what points us towards the distributive here? Is it just that it would be, well, you tell me. Right. From a textual, formal, grammatical structure, both are plausible. Yeah. But then one of them avoids surplusage, and it actually gives a meaning that Congress could have intended, and in fact did intend, as it made a liberalization, and I want to get back to this first step point, but not an opening of the floodgates. We really can't do this a priori, you know, just purely in the abstract. You're conceding that we have to sort of look at the content here and say, does this make sense? I mean, if their reading makes sense, they probably win. You know, if it's like a complete toss-up, they probably win. But you're saying this is crazy. I mean, you're saying that some of it just makes no sense from a criminal law standpoint. It does lead to absurd results. That's part of it. I think the surplusage point that we discussed at length, I think, is also important. It would be very strange. I see my time is almost up, if I can finish this answer. It would be very strange. This is not, just to answer Judge Griffin's point before, this is not just one verb in a string of verbs in one provision that would become surplusage. It would be the first paragraph of a list. Okay. I mean, your argument that and is distributive, does it matter that the and here is following the sub-b section as opposed to the sub-a section? I would think that if it were distributive, it would foul the first one, a, and, b, and, c. Here the and comes at the end of b. So how do you reconcile where the and is placed here? Well, when we have a multi, more than two, three or more. The and is not after the first exception. It's after the second. Doesn't that have some relevance and some importance? No, Your Honor. I don't think so. You say the and could be anywhere, I guess? No, no. It has to be before the last element in the list. I think that's how lists are always written in statutes. You excluded this, and this, and this. It seems like the and should be the first, the first exception. That's all. I would think that would be the more logical setup, that's all. You disagree, though. Well, right. Yeah, we do. And we think that Congress typically does add the connector, whether it's or, or whether it's and before the very last element in the list. And that's, for instance, the same in 18 U.S.C. 845a. Sure, sure, sure. This is an important case. I mean, Judge Griffin referenced Judge Wood's dissent, and she's obviously a very thoughtful jurist. And she addresses this surplusage argument directly. Why do you think she's wrong? I gather you think she's mistaken. What's her mistake? For some of the reasons that I mentioned before, some of the reasons that we mentioned are brief. I don't think that interpretation gives full credit to the specific requirement, which is repeated in each of these paragraphs, that the determination, the point determination be as determined under the sentencing guidelines. The sentencing guidelines give clear rules that are applied every day in the district courts on how to compute offenses and criminal history. That is not what the reading of the defense and Judge Wood in the Seventh Circuit, with respect, does. It does not. It creates a parallel system of point computation, which has some connection to the guidelines, but only to the extent that it works in certain aspects. It does not repeat and incorporate the point computation as determined under sentencing guidelines. That's our chief objection. And then there is other sub-arguments that go with that, but that is fundamentally our biggest concern with Judge Wood's analysis, which is the same concern that we have articulated in our brief with respect to the defendant's position, which we think is similar, if you will, as the defense counsel explained just a minute ago to Judge Wood. Thank you very much. Thank you. Ms. Wolfe, you have three minutes of rebuttal. Your Honor, the reason we know that Congress intended our reading to be the correct reading is because in the second section of 3553F, they did exactly what the government is asking you to read the first subsection as. The defendant did not use, and if they would have wanted this entire section to use em dashes, this would have been, or to have em dashes read that way, this would be the perfect place for them to have done it. And for the subparagraph one to have copied when they later changed it. But they didn't. How they use it is the defendant did not use violence or credible theft of violence. Or could have used or. They could have. And we are looking at a Congress that had the benefit of the Senate drafting manual, which a lot of the cases that were referenced in the brief of counsel did not have the benefit of. So we have to look at not only when they were drafting and passing this legislation, but also when the cases that he was citing were actually held. And a lot of them were before Congress had come up with this manual and decided these are going to be what we will look at and and is going to be conjunctive and or is going to be disjunctive. And those are the rules that they put in the manual. Can I ask you a question? Yes, you can. What about the hypothetical I was speaking with your colleague here about where the defendant has five three-point prior violent offenses. Your Honor. But he happens not to have a two-point. I mean, we could go on all day with hypos like this, where somebody is obviously super dangerous, total recidivist, but doesn't have the perfect little constellation here, which seems really arbitrary if he's got to have all three of these. And so why does that make any sense? It makes perfect sense for Congress to draft a statute that may be over-inclusive in who it allows to be eligible. But remember, it's just eligibility. We have district courts there to use their judgment to prevent people in that situation from getting safety valve. They can just decide to go at or over the mandatory minimum. Also, Your Honor, just because the parties agree to a set of languages, it doesn't always mean that every result is going to be the perfect result. And in that case, it might not be the best result. But just like in some cases when a party decides that on means that the occupier of a vehicle is someone on the roof, it might lead to an odd result where that is an occupier but the parties agreed on that language in the statute and that's what we have to read and that's what we have to follow. We cannot interpret that word to add on, well, on as in a motorcycle or something like that. That's the language they agreed to. I have a stipulation here. We don't, Your Honor. And it could lead to results that we have in place for other parts of this statute to also act as a gatekeeper for people we don't want being eligible. And if all of that fails, we have our district court there to act as the final decision maker on who gets mandatory minimums and who doesn't. And in my case, Your Honor, Aaron Haynes is the perfect candidate who should have been included in this. His three-point offense, because he had one, I think, misdemeanor theft that wouldn't have counted under subsection part one because it was a one-point offense. So when you're looking, he just had the three-point offense that was disqualifying him. That took place, I do believe, 15 years before he was in the conspiracy. It was going around to three different pharmacies and trying two occasions to get a prescription, a forged prescription, and on the third, he might have actually gotten the prescription. He pled to them all at once, and unfortunately, with his drug problem, even though he, I think, was on probation for part of it, it took him about 15 years of getting revoked and replaced, revoked and replaced, which led him to having 600 days jail on that six-year sentence, which normally wouldn't count because it's so old. And that three-point offense gave the judge no discretion as to whether or not he went below the five-year sentence. Now, our judge did eventually give him a very nice sentence, but it was still much higher than this defendant deserved, and he's one of the cases that the Congress would have thought would be a good candidate, and that's why they passed the law giving the court discretion. That's where I get off the bus. Hunter, in what world do we really say Congress would have thought? Your Honor, we cannot say what Congress would have thought, and we can only write what Congress put in there, but to say that it would be unreasonable for Congress to have thought that is what my point is. Thank you, Your Honor. We notice that you were appointed pursuant to the Criminal Justice Act. We want to thank you for your outstanding representation, Mr. Haynes, and thank you for your argument. Thank you for your service to the court, too. Thank you. Thank you both.